IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER M.,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CASE NO. 3:25-cv-472-JTA
                                         )        (WO)
FRANK BISIGNANO, Commissioner of         )
Social Security,                         )
                                         )
        Defendant.                       )

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christopher M. brings this action to review

a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1]

The Commissioner denied Plaintiff's application for a period of disability and Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court

construes Plaintiff's brief in support of his Complaint (Doc. No. 14) as a motion for

summary judgment and the Commissioner's brief in opposition to the Complaint as a

motion for summary judgment (Doc. No. 15).

After scrutiny of the record and the motions submitted by the parties, the Court finds

that Plaintiff's motion for summary judgment is due to be granted, the Commissioner's

motion for summary judgment is due to be denied, the decision of the Commissioner is due

to be reversed, and this matter is due to be remanded for further proceedings pursuant to

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

sentence four of 42 U.S.C. § 405(g).[2]

## I.    PROCEDURAL BACKGROUND AND FACTS[3]

Plaintiff is an adult male[4] with at least a high school education and past relevant work as a production line assembler and material handler. (R. 41.) He alleged a disability onset date of June 7, 2021 due to diabetes, high blood pressure, and cholesterol. (R. 520.)

In August 2021, Plaintiff protectively filed an application for SSI and for a period of disability and DIB under Titles II and XVI of the Social Security Act. His claim was denied initially and upon reconsideration. Following an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision. On October 18, 2023, the Appeals Council remanded the case to the ALJ for reconsideration.[5] (R. 275–80.) Following a second administrative hearing, the ALJ issued another unfavorable decision, and the Appeals Council denied Plaintiff's request for review. (R. 1–50.) The second hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

---

[2] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. No. 11.)

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 6.)

[4] Plaintiff was 34 years old on his alleged onset date. (R. 41.)

[5] The Appeals Council found the first hearing decision did not contain an adequate evaluation of Plaintiff's failure to follow prescribed treatment. (R. 18, 277.) The Appeals Council directed:

Upon remand the [ALJ] will:
- If the claimant is found to be disabled, consider failure to follow prescribed treatment pursuant to 20 CFR 404.1530 and 416.930 as well as Social Security Ruling 18-3p.

(R. 278.)

On June 27, 2025, Plaintiff filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g).[6] *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("In Social Security appeals, we must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004))). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (citation modified). The court "will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).[7] However, the court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see*

---

[6] Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

[7] The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

*Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." (quotation and brackets omitted)).

### III. STANDARD FOR DETERMINING DISABILITY

An individual who files an application for disability must prove that he is disabled. *See* 20 C.F.R. §§ 404.1505, 416.920(a)(4).[8] The Act defines "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 405.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. The ALJ must determine (1) whether Plaintiff is currently performing substantial gainful activity; (2) whether Plaintiff has a severe impairment or combination of impairments; (3) whether the severe impairment meets or exceeds an impairment in the Listings of Impairments; (4) whether the Plaintiff can perform his past relevant work despite the impairment; and (5) whether Plaintiff can perform other jobs that exist in the national economy[9] given his residual functional capacity ("RFC"), age, education, and work experience. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101–02 (11th Cir.

---

[8] Although DIB and SSI are separate programs, the standards for determining disability are identical. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

[9] To determine the existence of other jobs which the claimant can perform, the ALJ may rely on the testimony of a vocational expert ("VE"). *Winschel*, 631 F.3d at 1180.

2021).[10] Plaintiff has the burden of proof on the first four steps and the Commissioner carries the burden on the fifth step. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020). If the Commissioner carries the burden at the fifth step, the burden shifts back to Plaintiff to prove he is unable to perform the jobs suggested. *Id*.

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2027, but had not engaged in substantial gainful activity since June 7, 2021. (R. 22.) The ALJ determined Plaintiff suffers from the following severe impairments that significantly limit his ability to perform basic work activities: type 1 diabetes mellitus, peripheral neuropathy, and hypertension. (*Id*.) The ALJ also determined Plaintiff had the non-severe impairments of tachycardia, anemia, chronic kidney disease, and alcohol use disorder. (*Id*.)

The ALJ concluded that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25, 42.) The ALJ also concluded if Plaintiff follows his prescribed treatment, he retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[11]

---

[10] *Simon* was superseded on other grounds by 2017 regulations abrogating the treating physician rule. *See Harner v. Soc. Sec. Admin., Comm'r,* 38 F.4th 892, 894 (11th Cir. 2022).

[11] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of an arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

including:

> a sit/stand option with no more than 4 hours total of standing and/or walking during an 8-hour workday, occurring in one hour increments, while remaining on task; no limits on sitting; occasional bilateral pushing and pulling of foot controls; frequent climbing of ramps and stairs and balancing; never climbing ladders, scaffolds or ropes; occasional crawling; no work around unprotected heights or hazardous moving mechanical parts; no operation of a motor vehicle; occasional exposure to extreme cold and extreme heat, and avoid working around large open bodies of water.

(R. 42.)[12]

Based upon the testimony of a VE, the ALJ determined Plaintiff is unable to perform any past relevant work, even when he follows prescribed medical treatment. (R. 43.) The ALJ also determined an individual with Plaintiff's age, education, work experience, and RFC could work as a bench assembler, cashier II, or storage facility rental clerk when compliant with prescribed treatment. (*Id*.) The ALJ found that noncompliance with prescribed treatment "is a contributing factor material to the determination of disability" and concluded Plaintiff would not be disabled if he maintained compliance with treatment. (R. 44.) The ALJ stated, "Pursuant to SSR 18-3p, based on the overall evidence of record and specifically addressed above, [Plaintiff] has failed to follow prescribed treatment on a regular basis. The ability to engage in substantial gainful activity is expected with prescribed treatment." (*Id*.) The ALJ found there is no good cause for Plaintiff's failure to follow prescribed treatment and concluded Plaintiff is not disabled due to this

---

[12] The ALJ also provided an RFC for when Plaintiff is noncompliant with his medications. (R. 27.) Plaintiff's noncompliant RFC is identical to the compliant RFC, except that it includes a limitation that Plaintiff "would be absent from work more than one day per month on a regular basis." (*Id*.) Based on the noncompliant RFC, the ALJ concluded Plaintiff could not perform any past relevant work, and no jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 41.)

6

noncompliance.

## V.    DISCUSSION

Plaintiff presents two issues in this appeal. First, Plaintiff argues the ALJ did not meet her fifth step burden because she improperly gave an incomplete hypothetical to the VE. Second, Plaintiff argues the ALJ's finding that compliance with treatment would restore Plaintiff's ability to work is not supported by substantial evidence because the ALJ mischaracterized the medical expert's testimony and various facts in the medical record. The Court finds remand is warranted on the second issue.[13]

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"). "In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Dawkins*, 848 F.2d at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986)). This finding must be supported by substantial evidence, and the burden of producing evidence

---

[13] Because the Court determines remand is warranted on Plaintiff's second issue, it will pretermit discussion of the first. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (deciding there is no need to analyze other issues when the case must be reversed due to other dispositive errors).

concerning "unjustified noncompliance" is on the Commissioner. *Id*. at 1213, 1214 n.8.

"An ALJ's decision is not based on substantial evidence, and improper legal standards were applied if 'the ALJ's inaccuracies and mischaracterizations taint the record.'" *Sneed v. Berryhill*, No. 3:15-cv-591-SRW, 2017 WL 1230849, at *5 (M.D. Ala. Mar. 31, 2017) (quoting *Webster v. Barnhart*, 343 F. Supp. 2d 1085, 1093 (N.D. Ala. 2004)). "Moreover, when the inaccuracy or mischaracterization is the result of an ALJ's failure to acknowledge and discuss material evidence that conflicts with the ALJ's findings, the ALJ commits an error of law as the decision fails to explain the basis for the ALJ's conclusions sufficiently to permit a court to complete a meaningful review on appeal." *Id*. (citation omitted). ALJs are "required to build an accurate and logical bridge from the evidence to his or her conclusion." *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008). When an ALJ mischaracterizes or misstates the record, the ALJ has not "built the requisite accurate and logical bridge from the evidence to the conclusion." *Id*. Thus, the ALJ's decision is not supported by substantial evidence when the ALJ mischaracterizes material evidence. *Id*.; *Sneed*, 2017 WL 1230849, at *5 ("With regard to the ALJ's finding the plaintiff's testimony and allegations of her inability to afford medical care, the ALJ omits or mischaracterizes material evidence in the administrative record."); *see Baker v. Colvin*, No. 4:12-cv-00948-VEH, 2013 WL 1498978, at *9 (N.D. Ala. Apr. 4, 2013) (explaining that "because the ALJ mischaracterized the evidence on which he relie[d] to discredit [the plaintiff's] testimony, none of the ALJ's reasons for discrediting [the plaintiff] amounts to substantial evidence").

Here, the ALJ found Plaintiff "failed to follow prescribed treatment on a regular

8

basis[,]" and Plaintiff's "ability to engage in substantial gainful activity is expected with prescribed treatment." (R. 44.) The ALJ reasoned that Plaintiff's frequent hospitalizations from diabetic ketoacidosis ("DKA") were caused by noncompliance with prescribed treatment. (R. 42–43.) Without the frequent hospitalizations due to DKA, the ALJ concluded there are jobs within the national economy Plaintiff can perform. (R. 43.) To support her conclusion that Plaintiff's compliance with treatment would restore his ability to work, the ALJ relied on the testimony of Dr. Abosede Adeoshun and various record evidence. As Plaintiff correctly points out, the ALJ mischaracterized or misstated numerous sections of the record on which the ALJ relied when reaching this conclusion.

During the hearing on April 10, 2024, the ALJ took testimony from Dr. Abosede Adeoshun. (R. 193–200.) Dr. Adeoshun testified that Plaintiff met the listing impairments in 9.00 subsection (a) and (b) due to his multiple episodes of DKA. (R. 194-196.) The ALJ summarized Dr. Adeoshun's opinion as stating "[n]oncompliance played a large role in meeting the listing. There are multiple documentations of noncompliance with diet and medications on the medical reports." (R. 36.)[14] Dr. Adeoshun never made those statements. During her testimony, when the ALJ asked what role noncompliance played in Plaintiff meeting the listings, Dr. Adeoshun answered with uncertainty. Dr. Adeoshun testified:

> I will say that, Your Honor, I'm not sure if the appropriate medications especially (phonetic) for being a type 1, if they interferes (phonetic) with him. However, in the most recent . . . office visit in my records. The normal regimen that reports for type 1, which involve the mixed insulin that if they send him home it's 75/25 . . . . That's the mixed insulin. We typically don't

---

[14] The ALJ later stated she was "mostly persuaded" by Dr. Adeoshun's testimony, "especially regarding [Plaintiff's] noncompliance with treatment causing multiple episodes of DKA, and the absences she would expect from work due to the multiple episodes of DKA." (R. 39.)

use that for type 1 patient because it doesn't give the optimal management that we hope for.

He met with the pharmacy during the visit. They said March 20, 2024. And that weren't the conversation they had. Because patient, patient which was placed on bolus regimen, which is the regular regiment that was called a typical type 1A (phonetic).

Meaning that the patient will be on the long acting insulin, and will be on a short acting insulin before each meal. Whereas, it was documented that the patient did not want to make the change at that time.[15]

Now I don't know how much effort was put into educating the patient about the need for that. But this was a different conversation on there.

And this was the first time I'm seeing it here that patient was told to transition to the better (phonetic) bolus regimen.

(R. 196–97 (sic).)

The ALJ followed up with "So in your opinion. If an individual was following the prescribed treatment assessed by the physician. Would his condition have improved?" (R. 197.)  Dr. Adeoshun replied:

In a typical world, yes. In an ideal world yes, he should have improved. And from my experience, it typically would have improved.

---

[15] The ALJ cites the March 20, 2024 record as an example of Plaintiff's refusal to comply with the prescribed treatment regimen. (R. 34 ("Even records as recent as March 20, 2024, reflect a refusal to comply with the prescribed treatment regimen.")); (R. 42–43 ("The medical expert pointed out that the March 20, 2024 office visit reflects a regimen that is consistent with what she would have provided someone with the claimant's conditions. The undersigned notes that even then, the record reflects that the claimant did not want to make a change at that time. Instead of exercising medical compliance, the claimant testified that he was taking what he thought was best for him. Thus, medical noncompliance is ongoing.").) Yet, the record indicates that while Plaintiff and the pharmacist "discussed changing" Plaintiff "to a basal/bolus regimen[,]" because Plaintiff "did not want to make that change at this time" they decided to "continue with 27 units in the am and 22 units qPM." (R. 2273 (sic).) Although Dr. Adeoshun testified Plaintiff was placed on the bolus regimen (*see* R. 196 ("patient was placed on a bolus regimen")), it is unclear from the medical record whether Plaintiff was ever prescribed a bolus/basal regimen on March 20, 2024. (*See* R. 2272–74.) Hence, this record does not "reflect a refusal to comply with the *prescribed* treatment regimen." (R. 34 (emphasis added).)

10

> Also, having said that. I think I would lay some blame . . . with not being controlled on the doctor or the medical community. Because this type of patient should ideally be managed by an endocrinologist.

> And I don't see an endocrinologist note on there. . . . So ideally, that one patient has supposed to be managed by a specialist.

(R. 197 (sic).)

Plaintiff's attorney asked Dr. Adeoshun whether "there's a way to tell for sure, one way or the other, whether the diabetic ketoacidosis was due to noncompliance or the fact that he was not on the proper regimen of insulin to begin with?" Dr. Adeoshun replied "that's very difficult to say," and then explained DKA occurs "when there is a lack of insulin in the body." (R. 198.) Dr. Adeoshun further testified:

> So it may be a combination of medication noncompliance as well as dietary noncompliance. So it's really difficult to say whether . . . that it's because he is not taking his insulin is the only one that can tell us whether he's taking his insulin or he is not on the appropriate amount of insulin.

> But with blood glucose ranging as high as 881. It's either he is not taking the insulin or the insulin dosing that he's on is not enough.

(R. 198–99 (sic).) Dr. Adeoshun concluded her answer with, "[s]o it's really almost impossible for me to say." (R. 199.)

Therefore, contrary to the ALJ's assertion, while Dr. Adeoshun testified Plaintiff's frequent DKA hospitalizations might have been caused by noncompliance, Dr. Adeoshun did not testify nor opine that "noncompliance played a large role" in Plaintiff's DKA hospitalizations. The ALJ mischaracterized Dr. Adeoshun's testimony and was "mostly persuaded" by said mischaracterization. (R. 39 ("[T]he undersigned is mostly persuaded by the expert medical opinion testimony of Dr. Adeoshun, especially regarding Claimant's

11

noncompliance with treatment causing multiple episodes of DKA . . . .").) Because the ALJ mischaracterized Dr. Adeoshun's medical opinion testimony and relied on that mischaracterization to reach her conclusion concerning Plaintiff's noncompliance with medical treatment, her conclusion is not supported by substantial evidence.

The ALJ also mischaracterized or misstated other facts from the medical record to support her conclusion that Plaintiff was noncompliant with treatment. Perhaps most egregiously the ALJ stated that, when Plaintiff was hospitalized on January 10, 2023 with another episode of DKA, his urine drug screen "was positive for cocaine at 300 ng/mL, as well as other substances." (R. 32 (citing Exhibit 11F at 105).) This is simply incorrect.[16] Plaintiff's urine drug screen was *negative* for all substances. (R. 2223.)[17]

In addition, the ALJ incorrectly stated Plaintiff was advised "to seek a consultation at the Diabetes and Nutrition Center, but the medical record is devoid of such treatment pursuit." (R. 32.) That is a misstatement. As Plaintiff correctly points out, there are two instances in the medical record that reflect he went to the Diabetes and Nutrition Center ("DANC"). (R. 2078 (noting Plaintiff "last saw DANC in May")); R. 2086 (noting Plaintiff "has an appointment scheduled with DANC today (2/1/22)").)

---

[16] In this medical record, it lists multiple controlled substances and measurements under "URINE DRUG SCREEN CUTOFF CONCENTRATIONS[.]" (R. 2223–24, Exhibit 11F at 104-105.) The list includes "COCAINE  300 ng/ml." (R. 2224.). It appears the ALJ incorrectly cited this information as being Plaintiff's urine drug screen results.

[17] As Plaintiff notes, he never tested positive for cocaine, alcohol, or any other substance. (R. 627–28, 640, 644, 663, 667–68, 675, 704, 824–25, 840–41, 2106, 2112–23, 2223.) Whether Plaintiff tested positive for cocaine may not impact the ALJ's conclusion that Plaintiff was noncompliant with treatment and may be considered harmless. *See Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) (per curiam) (describing a harmless error as "one that does not affect the ALJ's ultimate decision"). Regardless, the Court notes this misstatement.

The ALJ also mischaracterized other medical records by taking citations out of context. For example, the ALJ stated that Benjamin Drake, D.O. opined Plaintiff's "DKA was 'probably' due to his 'noncompliance' with insulin therapy." (R. 31.) The record reads:

> [Plaintiff] is normally on 75/25 insulin this [does] not seem to be controlling his sugars very well. He says he has not really missed any doses prior to becoming sick. There was noted [sic] any evidence of ischemia infection or any other reason for him to become so hyperglycemic. *I believe this is probably noncompliance follow [sic] the patient says he has been compliant. Is difficult to tell.* I have spoken with his parents. They will try to make sure he takes his insulin home. I changed his insulin regimen to Lantus and Humalog which has proven much better blood glucose control while inpatient. IA will ensure that he gets these prescriptions on his well [sic] today.

(R. 813 (emphasis added).) While Dr. Drake indicates he believes it could be noncompliance, he does not reach that conclusion. Rather, Dr. Drake concludes it "is difficult to tell[,]" states Plaintiff reported compliance, and changed Plaintiff's insulin regimen to better control his blood sugar. While the ALJ did not misquote Dr. Drake, she did leave out important context indicating Plaintiff may have been compliant with his insulin regimen, but the prescribed regimen was not working well.

These mischaracterizations or misstatements of evidence by the ALJ were not harmless. Based on the testimony of a VE, the ALJ concluded there would be no jobs in the national economy Plaintiff could perform if he were absent from work more than one day per month on a regular basis. (R. 27, 41.) The ALJ determined Plaintiff was not disabled because his frequent hospitalizations due to DKA were caused by treatment noncompliance. (R. 44.) If the ALJ's conclusion concerning treatment noncompliance is not supported by substantial evidence, Plaintiff would be considered disabled because there

13

are no jobs in the national economy he could perform due to his frequent absences from work stemming from DKA. *See Goode*, 966 F.3d at 1279 ("[T]he Commissioner of Social Security must show the existence of jobs in the national economy which, given the claimant's impairments, the claimant can perform." (citation modified)); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) ("If you cannot make an adjustment to other work, we will find that you are disabled.").

Because the ALJ's mischaracterizations and inaccuracies concerning Plaintiff's noncompliance taint the record, the Court concludes the ALJ's finding that Plaintiff was noncompliant with his treatment is not supported by substantial evidence.[18] *See Sneed*, 2017 WL 1230849, at *5; *Baker*, 2013 WL 1498978, at *9; *Nichols v. Kijakazi,* No. 2:20-cv-1053-WKW-JTA, 2023 WL 3138938, at *17 (M.D. Ala. Apr. 7, 2023) ("by relying on a mischaracterized record, the ALJ did not rely on substantial evidence"), *report and recommendation adopted,* No. 2:20-cv-1053-WKW, 2023 WL 3137973 (M.D. Ala. Apr. 27, 2023); *Smith v. Comm'r of Soc. Sec.*, No. 6:15-cv-896-ORL-DAB, 2016 WL 3655309, at *7 (M.D. Fla. July 8, 2016) (finding the ALJ's decision was not based on substantial evidence when the ALJ mischaracterized and misstated evidence concerning the plaintiff's noncompliance with treatment). As the ALJ's conclusion Plaintiff is not disabled is not

---

[18]    In response to Plaintiff's arguments concerning the ALJ's misstatements or mischaracterizations, the Commissioner argues that Plaintiff is "inviting this Court to reweigh the evidence or substitute its judgment for that of the ALJ." (Doc. No. 15 at 9.) The Court disagrees. "An ALJ's decision is not based on substantial evidence, and improper legal standards were applied if 'the ALJ's inaccuracies and mischaracterizations taint the record.'" *Sneed*, 2017 WL 1230849, at *5 (quoting *Webster*, 343 F. Supp. 2d at 1093). Thus, Plaintiff is not asking this Court to impermissibly reweigh evidence. Rather, Plaintiff is asking the Court to determine whether the ALJ's conclusion concerning Plaintiff's noncompliance is based on substantial evidence.

14

supported by substantial evidence, Plaintiff is entitled to remand pursuant to 42 U.S.C. § 405(g). *See Jackson*, 99 F.3d at 1092.

## VI.   CONCLUSION

For the reasons stated, the Court finds the ALJ's decision is not supported by substantial evidence. Therefore, it is ORDERED as follows:

1.  Plaintiff's motion for summary judgment (Doc. No. 14) is GRANTED.

2.  The Commissioner's motion for summary judgment (Doc. No. 15) is DENIED.

3.  The decision of the Commissioner is REVERSED.

4.  This case is REMANDED for further proceedings not inconsistent with this Opinion, in accordance with sentence four of 42 U.S.C. § 504(g).

A separate judgment will issue.

DONE this 6th day of August, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE